Filed 7/31/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA DISABILITY SERVICES ASSOCIATION et al., | C088493 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201780002571CUSMGDS) |
| v. | |
| NANCY BARGMANN, as Director, etc. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge.  Affirmed.

Forrest & Becker Law Group and Emma L. Forrest for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Senior Assistant Attorney General, Ismael A. Castro, Christine M. Murphy, and Hadara R. Stanton, Deputy Attorneys General, for Defendants and Respondents.

Petitioners California Disability Services Association; Horrigan Cole Enterprises, Inc., doing business as Cole Vocational Services; Unlimited Quest, Inc.; Loyd's Liberty

Homes, Inc.; and First Step Independent Living Program, Inc. (collectively petitioners) filed a petition for writ of mandamus and damages and a complaint for declaratory relief against the California Department of Developmental Services (Department) and its director, Nancy Bargmann (collectively respondents). Petitioners challenged the Department's denial of their requests for a rate adjustment due to the increase of the minimum wage, which, in turn, impacted the salaries of their exempt program directors, who must be paid twice the minimum wage. The trial court upheld the Department's denial. We affirm.

BACKGROUND

The Welfare and Institutions Code requires the Department to contract with regional centers to provide services to individuals with developmental disabilities. (Welf. & Inst. Code, §§ 4500 et seq., 4620, subd. (a).) The regional centers contract for needed services, such as community-based day programs for individuals with developmental disabilities, through approved service providers. (*Id.*, § 4691, subd. (a).) Petitioners, except for California Disability Services Association, are approved service providers of community-based day programs.[1] California Disability Services Association is their trade association.

Providers are subject to various licensing requirements (Welf. & Inst. Code, § 4851), which obligate providers to submit to the regional center information about the community-based day program's design, job descriptions, staff qualifications, and staffing plan (Cal. Code Regs.,[2] tit. 17, § 50608). Collectively, providers employ 24 program directors who are required to "carry out the administrative responsibilities for

---

[1] We will refer to petitioner service providers as providers.

[2] Undesignated sections refer to title 17 of the California Code of Regulations.

2

the [community-based day] program," and have primary responsibility for multiple functions pertaining to staffing and project planning. (§ 56724.)

The Department initially sets a provider's "permanent payment rate" based on information submitted by the provider, including information regarding "allowable costs" such as salary, wages, and benefits. (§§ 57434, 57500.) Once a provider's permanent payment rate has been set, adjustments to the rate are constrained until a new rate-setting procedure is completed by the Department. (Welf. & Inst. Code, § 4691, subd. (b)(3).) Rate adjustments shall be made, however, for unanticipated program changes. "Unanticipated program changes shall be limited to the following: [¶] (1) Mandated service adjustments due to changes in, or additions to, existing statutes, laws, regulations or court decisions; and/or [¶] (2) Emergency relocations as required to protect the health and safety of the consumers." (§ 57920, subd. (c).)

Providers requested rate adjustments from the Department for an unanticipated program change on grounds the increase of the minimum wage resulted in an increase to the salaries of their program directors. (See Lab. Code, § 1182.11.) This was because a program director's job description meets the requirements of the Labor Code and applicable wage order allowing providers to classify program directors as exempt employees, but requiring their salary be at least twice the minimum wage. (See Lab. Code, § 515, subd. (a); see also Cal. Code Regs., tit. 8, § 11040.)

The Department denied providers' requested rate adjustment and subsequent appeal. Petitioners petitioned for writ of mandamus and damages and filed a complaint for declaratory relief. On reply, petitioners requested the trial court take judicial notice of several exhibits, one of which included 1,715 pages of Department documents showing it denied every "request for unanticipated program changes due to Program Director salary

3

increases necessitated by minimum wage laws . . . on precisely the same grounds [providers'] claims were rejected." Petitioners also sought judicial notice of a letter from the assistant director of the Department's Community Services Division concerning the minimum wage increase and ability of providers to seek rate adjustments. Finally, petitioners sought judicial notice of the Department's "Manual of Policies and Procedures" for "Adult Day Programs."

The trial court denied petitioners' request for judicial notice of these documents finding the request untimely because it was made on reply. The court further denied the petition and complaint for declaratory relief finding providers' classification of the program directors as exempt employees was not mandated by law, thus "there is no ministerial duty imposed on the Department to grant a wage increase request in order to accommodate continued entitlement to the exemption."

Petitioners appeal.

DISCUSSION

Petitioners contend the trial court erred by denying the petition because it misconstrued the relevant statutes and regulations and because it failed to consider several documents they requested be judicially noticed when making its decision. We disagree.

"Rules governing the interpretation of statutes also apply to interpretation of regulations." (*Diablo Valley College Faculty Senate v. Contra Costa Community College District* (2007) 148 Cal.App.4th 1023, 1037.) " ' "In construing any statute, we first look to its language. [Citation.] 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the

4

Legislature . . . .' [Citation.] 'If the language permits more than one reasonable interpretation, however, the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' [Citation.]" [Citation.] Also, a statute " 'must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.' " [Citations.] A court may not, "under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." ' " (*Lincoln Unified School District v. Superior Court* (2020) 45 Cal.App.5th 1079, 1090.)

"[T]he issue of statutory construction is a question of law on which a court exercises independent judgment." (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.)

As discussed, while providers cannot receive an adjustment to their permanent rate until the Department has set a new rate-setting procedure, rate adjustments are required for unanticipated program changes, which, as relevant here, include "[m]andated service adjustments due to changes in, or additions to, existing statutes, laws, regulations or court decisions." (§ 57920, subd. (c)(1).)

Petitioners contend the minimum wage increase and effect on the program directors' salaries constituted a mandated service adjustment. Petitioners reason that when calculating their permanent rate, both providers and the Department considered the salaries of providers' employees, including program directors who possess legally defined attributes that also entitle providers to classify them as exempt employees who

5

must make at least twice the minimum wage. Thus, petitioners maintain, the "program" as established by the permanent rate and licensing disclosures was changed when the law required an increase to the minimum wage resulting in an increase to the salary of program directors.

The problem with petitioners' argument is that a change to the program, as established by the permanent rate and licensing procedures, does not fall within the definition of an "[u]nanticipated program change." The regulation clearly defines the term as "[m]andated service adjustments due to changes in, or additions to" enumerated legal authorities. The regulation's focus is on new legal authority and whether it *mandates* a service adjustment.[3] Thus, a particular program's allowable costs are irrelevant and our focus must be on "changes in, or additions to, existing statutes, laws, regulations or court decisions." (§ 57920, subd. (c)(1).)

The statute requiring an increase of the minimum wage does not mandate any change to program directors' salaries -- by the statute's plain reading it applies only to minimum wage workers, which a program director is not. (See Lab. Code, § 1182.12.) Thus, the law increasing the minimum wage cannot be the basis for an unanticipated program change.

Petitioners point to the legally required attributes of program directors (see § 56724) and reason that, because those attributes also entitle providers under the applicable wage order (see Cal. Code Regs., tit. 8, § 11040) to classify them as exempt employees under Labor Code section 515, the increase to the minimum wage resulted in

---

[3] In addition to arguing the increase of the minimum wage did not have a mandatory effect on program directors' salaries, respondents argue the increase also did not result in a service change. Because we conclude the increase did not have a mandatory implication on program directors' salaries, we need not determine whether the salary increase constituted a "service change." (§ 57920, subd. (c)(1).) Nor do we venture to interpret the meaning or significance of that term.

6

a mandatory adjustment.  Not so.  As the trial court noted, these *authorities do not require providers to classify program directors as exempt employees.*  (See Lab. Code, § 515, subd. (a) ["The Industrial Welfare Commission may establish exemptions . . . ."]; see also Cal. Code Regs., tit. 8, § 11040 [wage order specifying duty requirements that qualify an employee for exempt status].)  Indeed, *it was providers who elected this option to avoid paying overtime wages*.  (See Lab. Code, §§ 510, subd. (a)(1), 515.)

The only provisions of legal significance identified by petitioners requiring the program directors' salaries be at least twice the minimum wage are the employment contracts between the providers and the program directors.  Thus, the adjustment was not mandated by "statutes, laws, regulations or court decisions."  (See § 57920, subd. (c)(1).)  Accordingly, petitioners have not shown an unanticipated program change, entitling providers to a rate adjustment.

Given this plain interpretation of the pertinent statutes and regulations, we do not see how the Department's rejection of similar claims, a Department letter about rate adjustments regarding the increase of the minimum wage, and a service manual are relevant to the ultimate question of whether a legal mandate required providers to make service adjustments.  Thus, petitioners cannot show they were prejudiced by the court's denial of their judicial notice requests.  (See Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or a new trial granted, in any cause . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)[4]

---

**4**      We also decline to consider the issue of the California Disability Services Association's standing.  It requests us to do so, so that its other members may efficiently receive a rate adjustment on similar grounds discussed in this appeal.  Given our conclusion providers are not entitled to a rate adjustment, the California Disability Services Association's concern is unwarranted.

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/_____
Robie, J.

We concur:

/s/_____
Raye, P. J.

/s/_____
Butz, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.